COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-261-CR

 

 

MICHAEL HECTOR DIAZ                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

In a
single point, Appellant Michael Hector Diaz challenges the legal sufficiency of
the evidence to support his conviction for driving while intoxicated (ADWI@).  We will affirm. 








                                          II.  Background

Officer
Penny Lopez had been a jailer with the Keller Police Department for three years
before she transferred to the patrol division in November 2005.  Around 10:45 on the night of January 11,
2006, she was patrolling with her field training officer, Corporal Craig Berry,
when she saw a white Durango pick up truck without a front license plate swing
wide onto Main Street and then turn without signaling.  In response, Officer Lopez executed a traffic
stop.

As she
approached the truck, the driver rolled his window down about eight
inches.  He had a moderate odor of an
alcoholic beverage on his breath, his eyes were bloodshot, and his eyelids
appeared heavy.  There was fast food in the
seat but the driver was not eating when he was pulled over.  Officer Lopez identified the driver as Diaz
and asked him if he had been drinking. 
He denied that he had. 








Officer
Lopez walked back to the patrol car to consult with Corporal Berry, who as the
department=s DWI enforcement officer, had
considerable experience.  He suggested
that she administer field sobriety tests to determine whether Diaz was
intoxicated.  Officer Lopez had Diaz exit
the pickup truck and, under Corporal Berry=s supervision,
she performed the horizontal gaze nystagmus test (AHGN@) on
Diaz.  The HGN yielded all six clues of
intoxication. Officer Lopez then asked Diaz to perform a one-leg-stand test,
but after failing to keep his leg up, he quit and refused to attempt any
further tests.  Corporal Berry confronted
Diaz about his denying having consumed any alcohol that night, whereupon Diaz
became argumentative.  

The
officers placed Diaz under arrest and took him to the jail, where he refused to
provide a sample of his breath or blood for testing or to perform any more
tests.  Officer Lopez then procured a
search warrant for a blood sample and transported Diaz to North Hills Hospital.


Approximately
three hours after the traffic stop, Diane Kirk, a certified phlebotomist who
had performed thousands of blood draws, took a sample of Diaz=s
blood.  Following established procedures,
she drew the sample into a standard blood-kit vial that contained preservative
and anticoagulant.  The vial was then
sealed and transported to the Keller Police Department, where it was placed in
the evidence refrigerator until it could be delivered to the Texas Department
of Public Safety Crime Laboratory (ADPS Lab@) in
Garland for testing. 

On
February 27 and 28, 2006, Kenneth Evans, drug section supervisor at the DPS
Lab, analyzed the sample drawn from Diaz.  Using methods practiced over his twenty-five
years as a forensic analyst, he determined that the blood alcohol concentration
of the sample was  0.09 grams of alcohol
per 100 milliliters of blood. 








The
State charged Diaz with DWI, alleging, among other things, that Diaz had been Aintoxicated
by not having the normal use of his mental and physical faculties by reason of
the introduction of alcohol into his body or by having an alcohol concentration
of at least 0.08.@[2]  The case was tried to a jury, which returned
a verdict of guilty.  The trial court
sentenced Diaz to one year=s
confinement probated for two years and imposed a fine of $850. 

III. Standard of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).








This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778.  The trier of fact is the
sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009).  Thus, when performing a
legal sufficiency review, we may not re-evaluate the weight and credibility of
the evidence and substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

IV. 
Sufficient Evidence to Prove Intoxication

Diaz
contends that the evidence is legally insufficient to prove that he was
intoxicated.        Under the penal code, Aintoxicated@ means
not having the normal use of one=s mental
or physical faculties by reason of the introduction of alcohol into the body or
having a blood alcohol concentration equal to or greater than 0.08 grams of
alcohol per 100 milliliters of blood. 
Tex. Penal Code Ann. ' 49.01.








Diaz
contends that the evidence is insufficient to show he was intoxicated  because his cross examination of the State=s
witnesses undermined the State=s
case.  In support of this claim, he
points to testimony that it was the arresting officer=s first
arrest for DWI, that there was no alcohol found inside the truck, that there
was fast food in it, that the proper HGN testing protocol was not followed,
that Officer Lopez relied on Corporal Berry=s
decision to arrest Diaz, and that the DPS chemist who tested his blood sample
testified only that the blood alcohol concentration was over the legal limit on
the day of testing.

All of
these contentions, however, urge that we re-evaluate the weight and credibility
of the evidence.  Therefore, none are
germane to a legal sufficiency analysis. 
See Brown, 270 S.W.3d at 568; Dewberry, 4 S.W.3d at
740.  








Moreover,
viewing the evidence in the light most favorable to the verdict, the evidence
is legally sufficient.  The arresting
officer testified that her observations of and interactions with Diaz on the
night of his arrest led her to believe that he had lost the normal use of his
physical and mental faculties by drinking alcohol, and therefore, had been
intoxicated.  She arrived at this
conclusion after observing him commit two traffic violations, smelling a
moderate odor of an alcoholic beverage on his breath, performing HGN testing
that yielded six out of six possible clues indicating intoxication, witnessing
him argue with Corporal Berry and, after attempting and failing to perform a
field sobriety test, refusing to attempt any others.  Officer Lopez then obtained a warrant for a
blood sample and transported Diaz to North Hills Hospital where a licensed
phlebotomist drew a sample of his blood which was sealed and later tested at
the DPS Lab in Garland.  Evans, the
chemist who analyzed the sample, testified that the it yielded a blood alcohol
concentration of 0.09 grams per 100 milliliters, which Evans testified is above
the legal limit of 0.08.  Evans further
testified that assuming that blood sample had been drawn three hours after Diaz
had consumed his last alcoholic beverage, the 0.09 result was likely lower than
what it would have been had it been drawn at the time Diaz was driving.  After hearing this and other evidence, the
jury found appellant guilty.  Viewed in
the light most favorable to the verdict, we hold that the evidence is legally
sufficient to show that Diaz was intoxicated, and we overrule his sole
point.  See Maxwell v. State,
253 S.W.3d 309, 316B17 (Tex. App.CFort
Worth 2008, pet. ref=d). 

 

 

 

 








V. 
Conclusion

Having
overruled Diaz=s sole point, we affirm the
trial court=s judgment.

 

PER
CURIAM

PANEL:  WALKER, LIVINGSTON, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: February 4, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. ' 49.01(2)(A) & (B)
(Vernon 2003).